```
___ FILED      ___ ENTERED
___ LODGED     ___ RECEIVED

       MAY 29 2019

         AT SEATTLE
   CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                     DEPUTY
```

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHASE BLISS COLASURDO,<br><br>Defendant. | NO. CR19-097<br><br>**PLEA AGREEMENT** |

The United States of America, by and through Brian T. Moran, United States Attorney for the Western District of Washington, and Todd Greenberg, Assistant United States Attorney for said District, Defendant, CHASE BLISS COLASURDO, and his attorney, Eric W. Lindell, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c):

**1.     Waiver of Indictment.** Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter pleas of guilty to the charges brought by the United States Attorney in an Information.

**2. The Charges.** Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enter a plea of guilty to the following charges contained in the Information:

*Interstate Threats*, as charged in Counts 1 and 2, in violation of Title 18, United States Code, Section 875(c);

By entering the pleas of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering his pleas of guilty, he will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

**3. Elements of the Offense.** The elements of the offense of *Interstate Threats*, in violation of Title 18, United States Code, Section 875(c), are as follows:

First, the defendant knowingly and willfully transmitted a communication containing a threat to injure the person of another;

Second, the communication was transmitted in interstate commerce;

Third, the defendant intended that the communication be taken as a threat; and

Fourth, under the circumstances in which the threat was made, a reasonable person would foresee that it would be understood by persons hearing or reading it as a serious expression of an intention to injure the person of another.

**4. The Penalties.** Defendant understands that the statutory penalties for the offense of *Interstate Threats*, in violation of Title 18, United States Code, Section 875(c), are as follows: imprisonment for up to five (5) years, a fine of up to two hundred and fifty thousand dollars ($250,000.00), a period of supervision following release from prison of up to three (3) years, and a special assessment of one hundred dollars ($100.00). If Defendant receives a sentence of probation, the probationary period could be up to five (5) years. Defendant agrees that the special assessment shall be paid at or before the time of sentencing

Defendant understands that supervised release is a period of time following imprisonment during which he will be subject to certain restrictions and requirements. Defendant further understands that if supervised release is imposed and he violates one or more of its conditions, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant's serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that in addition to any term of imprisonment and/or fine that is imposed, the Court may order him to pay restitution to any victim of the offense, as required by law.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

5. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, he knowingly and voluntarily waives the following rights:

a. The right to plead not guilty and to persist in a plea of not guilty;

b. The right to a speedy and public trial before a jury of his peers;

c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for him;

d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

e. The right to confront and cross-examine witnesses against Defendant at trial;

f. The right to compel or subpoena witnesses to appear on his behalf at trial;

g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

h. The right to appeal a finding of guilt or any pretrial rulings.

6. **United States Sentencing Guidelines.** Defendant understands and acknowledges that, at sentencing, the Court must consider the sentencing range calculated under the United States Sentencing Guidelines, together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

a. The Court will determine the applicable Sentencing Guidelines range at the time of sentencing;

b. After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d. Defendant may not withdraw the guilty pleas solely because of the sentence imposed by the Court.

7. **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

**8.     Statement of Facts.** The parties agree on the following facts. Defendant admits he is guilty of the charged offense.

> On February 26, 2019, COLASURDO sent an email from his Gmail account to five different media outlets and news agencies stating, "I'm going to personally Execute [White House Senior Advisor J.K.] for his countless treasonous crimes."
>
> On February 27, 2019, COLASURDO posted on his Instagram account a picture of a hand pointing what appears to be black handgun directly at a photograph of J.K.'s head. In the comments section, COLASURDO wrote, "Mossad can sneak in your house and take a picture. . . . This sneaky mossad agent has never been so serious about something as he is about putting a bullet in [J.K.'s] brain. It must be done."
>
> On February 27, 2019, COLASURDO posted on his Instagram account a picture of himself holding what appears to be a black handgun. In the comments section, COLASURDO wrote, "I made a death threat against [J.K.] yesterday and I have not been arrested yet. Almost like I have special forces murdering anyone trying to fuck with me or something. . . . By the way I do still plan on personally executing him, ideally."
>
> On March 14, 2019, COLASURDO posted on his Instagram account a picture of J.K. and his wife, along with the comment: "They are far more dangerous than cockroaches and should be executed."
>
> On March 4, 2019, COLASURDO posted a picture of D.T. Jr. on his Instagram account. In the comments section, COLASURDO wrote, "I would just like to let the secret service know that I am going to Execute this faggot. And there is nothing you can do about it, as indicated by the fact that I have been posting death threats against politicians for like a week and am still here posting."
>
> On March 25, 2019, COLASURDO posted a photo of himself holding what appears to be a black handgun with the caption: "It's Time To Start Bombing Synagogues." On April 29, 2019, he reposted on Instagram a photograph taken at the funeral for the victims of the recent California synagogue shooting with the comment: "We need to bomb synagogues."
>
> During April 2019, COLASURDO made multiple threats to kill and/or injure K.D., a public figure who lives in or near Los Angeles, California. For example, on April 23, 2019, COLASURDO sent an email to K.D.

stating, "I think you might be about to get killed because you serve the devil," referring to Jews. This email had a link to COLASURDO's Instagram account that, in turn, contained photographs of COLASURDO holding what appeared to be firearms and various threats to kill Jews and bomb synagogues. Also on April 23, 2019, COLASURDO sent another email to K.D. stating, among other things, "Do you think you might be in danger? I certainly do."

On April 30, 2019, COLASURDO sent K.D. an email in which he threatened to kill her employer, B.S., also a public figure who lives in or near Los Angeles, California. In the email, COLASURDO stated, "I legitimately want to shoot your boss [B.S.] in the head, and would not be surprised if he does in fact get his brains blown out soon."

In April 2019, COLASURDO made several posts on his Instagram account threatening to kill B.S. In one post, COLASURDO posted a photograph of B.S. with text stating: "Find where he lives, follow him and kill him in public, somehow escaping and not being arrested." In another post, COLSURDO posted a photograph of B.S. with the message: "KIKES like to get their brains blown out with a 9mm. Run up in [B.S.'s] house with a 9mm and blow his kike brains out." In a third post, COLSURDO reposted a tweet sent by B.S. and wrote: "[B.S.] needs to be executed for retweeting this alone. #killthejewssavetheworld." In another post, COLASURDO wrote: "Hey [B.S.], kike that should be Executed. If [the President of the United States] is committed to fighting anti Semitism. Explain how I have been telling you that you are going to get your kike brains blown out for like months and I have not been touched by law enforcement."

All of the above-referenced emails and Instagram posts travelled through interstate electronic communications networks from the State of Washington to another state.

On April 3, 2019, COLASURDO attempted to purchase a Sig Sauer SP2022 9mm semi-automatic pistol online from the Sportsman's Warehouse for the price of $549.00. Several days after COLASURDO made the payment, the firearm purchase was denied by the NICS database system.

On May 1, 2019, COLASURDO was arrested and a search warrant was executed at his residence. The following items were located at the residence: several pieces of ballistic armor; 345 rounds of 9mm ammunition; a 9mm firearm magazine loaded with rounds of 9mm

ammunition; an unloaded 9mm firearm magazine; various firearm accessories, including optics and LED laser mounts; three firearm holsters; multiple airsoft firearms; night vision goggles; a gas mask; Nazi flag with swastika; framed portrait of Adolph Hitler; and books including "Hitler's Revolution" and "The Protocols of Learned Elders of Zion."

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

9. **Sentencing Factors**. Defendant understands that at the time of sentencing, the government will argue that the following Sentencing Guidelines provisions apply in this case:

A base offense level of 12, pursuant to USSG § 2A6.1(a)(1);

A six-level upward adjustment because the offense involved conduct evidencing an intent to carry out the threats, pursuant to USSG § 2A6.1(b)(1);

A two-level upward adjustment because the offense involved more than two threats, pursuant to USSG § 2A6.1(b)(2);

A three-level upward adjustment because the evidence supports a finding beyond a reasonable doubt that the defendant intentionally selected a victim as the object of an offense of conviction because of the actual or perceived religion of the person, pursuant to USSG § 3A1.1(a);

A six-level upward adjustment because a victim was a government officer or employee and the offense of conviction was motivated by such status, pursuant to USSG § 3A1.2(a)(1)-(2) and (b); and

The United States acknowledges that if Defendant qualifies for an acceptance of responsibility adjustment pursuant to USSG § 3E1.1(a), and if the offense level is sixteen (16) or greater, his total offense level should be decreased by three (3) levels pursuant to USSG § 3E1.1(a) and (b), because he has assisted the United States by timely notifying the authorities of Defendant's intention to plead guilty, thereby permitting the United


to The CC

States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines. Defendant is free to argue against the application of any of the above Guidelines provisions. Defendant understands that at the time of sentencing, the Court is free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

10. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Agreement that are based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant. Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

11. **Forfeiture of Firearms or Contraband.** Defendant agrees that if any law enforcement agency seized any firearms or any other illegal contraband that was in Defendant's direct or indirect control, Defendant consents to the administrative forfeiture, official use, and/or destruction of said firearms or contraband by any law enforcement agency involved in the seizure of these items.

//
//

**12. Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges in the Indictment that were previously dismissed or any additional charges that had not been prosecuted. Defendant further understands that if, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that is in violation of the conditions of release (examples of which include, but are not limited to: obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the plea agreement.

13. **Waiver of Appeal.** As part of this Plea Agreement and on the condition that the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range that is determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

   a. any right conferred by Title 18, United States Code, Section 3742 to appeal the sentence, including any restitution order imposed; and

      b.    any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

Furthermore, this waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. 2241, to address the conditions of his confinement or the decisions of the Bureau of Prisons regarding execution of sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

14. **Voluntariness of Plea.** Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily and that no threats or promises, other than the promises contained in this Plea Agreement, were made to induce Defendant to enter this plea of guilty.

15. **Statute of Limitations.** In the event this Agreement is not accepted by the Court for any reason, or Defendant has breached any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

//
//
//
//
//
//
//

Plea Agreement (*United States v. Colasurdo*) - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

16. **Completeness of Agreement.** The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties. This Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 29th day of MAY, 2019.

_____
CHASE BLISS COLASURDO
Defendant

_____
ERIC W. LINDELL #18972
Attorney for Defendant

_____
TODD GREENBERG
Assistant United States Attorney

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970