Chief Judge Ricardo S. Martinez

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHASE BLISS COLASURDO,<br><br>Defendant. | NO. CR19-097RSM<br><br>UNITED STATES' SENTENCING MEMORANDUM |

## I. Introduction.

Defendant Chase Colasurdo, who has a history of mental illness and prior convictions stemming from a violent assault, made numerous online threats of violence against multiple victims, including public officials and media figures. In February and March 2019, Colasurdo posted multiple threats to kill Jared Kushner, a senior White House advisor, and Donald Trump, Jr., the son of the President of the United States. Special Agents with the FBI and U.S. Secret Service learned of these threats and went to interview Colasurdo. The agents warned Colasurdo that he was committing federal crimes by posting these threatening communications, and Colasurdo assured them that he would not post any more threats. Thereafter, Colasurdo continued to make violent threats against media figures Ben Shapiro and Kassandra Dillon, both of whom are affiliated with *The Daily Wire*.

SENTENCING MEMORANDUM - 1
CR19-097, *United States v. Chase Bliss Colasurdo*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Many of Colasurdo's threats involved the threatened use of firearms, while others were fueled by his radical anti-Semitic ideology. During this same time, Colasurdo was stockpiling ballistic armor, hundreds of rounds of ammunition, and attempting to purchase a firearm.

The government respectfully recommends that the Court sentence the defendant to a term of imprisonment of 60 months, and the maximum available term of supervised release of three years, with all of the conditions of supervised release recommended by the Probation Office.

## II. The Sentencing Guidelines Calculations.

The government concurs with the Sentencing Guidelines calculations set forth in the Presentence Report. The Probation Office correctly calculates the total offense level at 25, the Criminal History Category at I, and the resulting advisory Sentencing Guidelines range at 57-71 months.

Colasurdo objects to the majority of the PSR's Guidelines calculations. Specifically, he objects to each of the Guidelines provisions applied by the Probation Office, with the exception of the base offense level and the two-level enhancement for multiple threats (USSG § 2A6.1(b)(2)).

Colasurdo's objections are baseless. The facts contained in the Plea Agreement and the PSR clearly support the application of all of the Guidelines factors assessed by the Probation Office. The government will address each of the contested Guidelines calculations in turn.

*Enhancement for conduct evidencing intent to carry out threats (§ 2A6.1(b)(1))*

Paragraphs 32 and 41 of the PSR apply a six-level enhancement because Colasurdo's conduct evidenced an intent to carry out his threats. The Probation Office properly applied this enhancement because the majority of Colasurdo's threats involved the threatened use of firearms and ammunition; at the very same time, he was acquiring massive quantities of ammunition and attempting to purchase a firearm.

SENTENCING MEMORANDUM - 2
CR19-097, *United States v. Chase Bliss Colasurdo*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

As documented in the PSR, Colasurdo made numerous threatening communications regarding his intent to carry out violent acts with firearms and ammunition, for example:

- Posted photograph of Colasurdo's hand pointing a **black handgun** at Jared Kushner's head, with a comment about "putting a **bullet** in [Kushner's] brain." (¶ 9)

- Posted photograph of Colasurdo holding a **black handgun** and threatening Kushner. (¶ 10)

- Email to Kassandra Dillon threatening to kill her, and containing a link to photographs of Colasurdo holding **multiple firearms** and making threats to kill Jews and bomb synagogues. (¶ 16)

- Email threatening to kill Ben Shapiro and stating that Colasurdo wanted to "**shoot** [Shapiro] in the head" and Shapiro would have his "brains **blown out** soon." (¶ 17)

- Post threatening to kill Shapiro by having his "**brains blown out with a 9mm**." (¶ 18)

During the same time that Colasurdo was making these threats, he was amassing hundreds of rounds of 9mm ammunition and firearms tactical accessories, and he attempted to purchase a 9mm pistol. PSR ¶¶ 23-25. Notably, this was precisely the same type of firearm and ammunition (9mm) that Colasurdo had threatened to use to kill Ben Shapiro. Courts have applied the six-level enhancement under USSG 2A6.1(b)(1) in analogous circumstances. *See, e.g. United States v. Newell*, 309 F.3d 396 (6th Cir. 2002) (§ 2A6.1(b)(1) applied based on large number of threats and defendant's purchase of handgun and ammunition); *United States v. Kirsh*, 54 F.3d 1062 (2d Cir. 1995) (§ 2A6.1(b)(1) applied where defendant purchased guns during the same period when he sent letters threatening to shoot victims); *United States v. Hines*, 26 F.3d 1469 (9th Cir 1994) (enhancement applied based on, among other evidence, defendant's possession of one firearm and discussion of purchasing another); *United States v. Ware*, 386 Fed. Appx. 10, 2010 WL 2911975 (2d Cir. 2010) (enhancement applied where defendant

SENTENCING MEMORANDUM - 3
CR19-097, *United States v. Chase Bliss Colasurdo*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | |
|---|---|
| 1 | threatened to kill girlfriend with a firearm and hollow point bullets, and was caught |
| 2 | possessing a loaded gun with hollow point ammunition). |
| 3 | *Enhancement for official victim (§ 3A1.2(b))* |
| 4 | Paragraph 35 of the PSR assesses a six-level enhancement as to Count 1, involving |
| 5 | victims Jared Kushner and Donald Trump, Jr., because Colasurdo targeted these victims |
| 6 | based on their status as a federal public official (Kushner) or a family member of a |
| 7 | federal public official (Trump, Jr.). This enhancement clearly applies on the facts of this |
| 8 | case. There is no rational, alternative explanation for why Colasurdo would have |
| 9 | threatened both Kushner and Trump, Jr. (along with Ivanka Trump, PSR ¶ 11) other than |
| 10 | their status as official victims. |
| 11 | *Enhancement for hate crime motivation (§ 3A1.1(a))* |
| 12 | Paragraph 43 of the PSR applies a three-level enhancement as to Count 2, |
| 13 | involving victims Kassandra Dillon and Ben Shapiro, because Colasurdo targeted these |
| 14 | victims due to their perceived religion. Here, the facts in the PSR practically speak for |
| 15 | themselves in terms of proving Colasurdo's hate crime motive beyond a reasonable |
| 16 | doubt.[1] As documented in the PSR, Colasurdo repeatedly and expressly made clear that |
| 17 | he was threatening Dillon and Shapiro because he perceived they were Jewish. For |
| 18 | example: |

- Email to Dillon demanding that she become his "sex slave" and that she tell her boss (Shapiro) to "give me a *'stake' in the Jews*," referring to committing a sexual act on Dillon. (¶ 14)

- Email to Dillon threatening, "I think you might be about to get killed because you serve the devil," *referring to Jews*, and containing a link to photographs of Colasurdo holding firearms and "various threats to *kill Jews and bomb synagogues*." (¶ 16)

- Post containing a photo of Shapiro with the threatening comment: "*Kikes* like to get their brains blown out with a 9mm. Run up in his house with a 9mm and blow his *kike* brains out." (¶ 18)

---

[1] Unlike the majority of Guidelines provisions, the enhancement under § 3A1.1(a) applies only where the evidence establishes the defendant's hate crime motive beyond a reasonable doubt. USSG § 3A1.1(a).

SENTENCING MEMORANDUM - 4
CR19-097, *United States v. Chase Bliss Colasurdo*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- Reposting of a tweet by Shapiro with the threatening comment: "Ben Shapiro needs to be executed for retweeting this alone. *#killthejewssavetheworld*." (¶ 18)

- Post containing the threat to kill Shapiro: "Hey [Shapiro], *kike* that should be Executed. If Trump is committed to fighting *anti-Semitism* [e]xplain how I have been telling you that you are going to get your *kike* brains blown out for like months and I have not been touched by law enforcement." (¶ 19)

- Multiple threatening posts concerning killing Jews, including a photo of Colasurdo holding a black handgun with the caption, "*It's Time to Start Bombing Synagogues*"; and a post of a photograph taken at the funeral for victims of a recent shooting at a synagogue in California with the comment, "*We need to bomb synagogues.*" (¶ 22)

Colasurdo's interactions with law enforcement officers, and the items he possessed at his residence, further confirm that his offense conduct was motivated by his radical, anti-Semitic beliefs. For example, when FBI and Secret Service agents interviewed Colasurdo, he made "numerous anti-Semitic comments expressing hostility against Jews." PSR ¶ 21. Moreover, when the agents executed a search warrant at Colasurdo's residence, they seized a variety of anti-Semitic propaganda items, including a Nazi flag with a swastika, a framed portrait of Adolph Hitler, and anti-Semitic books such as "Hitler's Revolution" and "The Protocols of Learned Elders of Zion." PSR ¶ 25.

Based on this record, the Probation Office correctly assessed the three-level enhancement under USSG § 3A1.1(a).

III. **Sentencing Recommendation.**

For the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of imprisonment of 60 months and a term of supervised release of three years, with all of the conditions of supervised release recommended by the Probation Office. The various statutory sentencing factors support a custodial sentence of 60 months in this case, including, most prominently, the nature and circumstances of the offense; the need for the sentence imposed to reflect the seriousness

SENTENCING MEMORANDUM - 5
CR19-097, *United States v. Chase Bliss Colasurdo*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of the offense, to promote respect for the law, and to provide just punishment; the history and characteristics of the defendant; and the need for the sentence to afford adequate deterrence to criminal conduct.

**A. Nature and Circumstances of the Offense.**

Several aspects of Colasurdo's offense conduct make it extremely serious.

First, Colasurdo made threats of violence over a prolonged time and against at least four different victims. In the midst of the offense conduct, the FBI and U.S. Secret Service took the extremely reasonable step of warning Colasurdo to stop making threats, instead of immediately arresting him. Colasurdo did not heed this warning, but instead continued making increasingly violent threats against Ms. Dillon and Mr. Shapiro.

Second, the defendant's conduct seriously affected the victims in this case. The evidence before the Court makes clear that Mr. Shapiro and Ms. Dillon were justifiably placed in fear by the defendant's threats, as documented in Mr. Shapiro's victim impact letter and by the fact that Ms. Dillon went to the police out of fear for her immediate physical safety. PSR Sentencing Recommendation at 4 ("Dillon eventually went to the Los Angeles Police Department, as she feared Mr. Colasurdo may carry out his threats against her at a political event in which she was participating.").

Third, and perhaps most significantly, the dangerousness of the defendant's offense conduct was heightened by his preparatory acts of amassing large amounts of ammunition, body armor, and attempting to purchase a firearm. This Court is well aware of the extreme risks caused by the toxic combination of firearms in the hands of angry, mentally unstable individuals. The evidence seized from Colasurdo's residence – especially in the context of his violent threats involving the use of firearms – distinguishes the instant case from the more typical, run-of-the-mill federal interstate threat case, and calls for a more significant sentence.

//
//
//

SENTENCING MEMORANDUM - 6
CR19-097, *United States v. Chase Bliss Colasurdo*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B. History and Characteristics of the Defendant.**

The defendant's personal history presents a mix of aggravating and mitigating factors. In terms of aggravating circumstances, Colasurdo has a prior conviction for a violent offense. *See* PSR ¶ 56 (assault of individuals at kickboxing gym and assault of responding police officer). This provides evidence that Colasurdo has engaged in – and therefore may again commit – actual (and not just threatened) acts of violence.

On the other hand, it is clear that Colasurdo's mental health issues are the primary driving force behind his disturbing ideation and criminal conduct. When untreated, Colasurdo's mental health issues make him a violent and dangerous individual. However, by all accounts, Colasurdo performed well while on supervision with the King County Mental Health Court. This provides reason to be optimistic that he will benefit equally from the term of supervised release the Court imposes in this case. It is with this in mind that the government recommends a sentence near the low end of the Sentencing Guidelines range, and not higher.

**C. Need for Adequate Deterrence.**

The Probation Office correctly identifies this case as one in which the Court's sentence should reflect the need for adequate general deterrence. As noted in the Presentence Report, Colasurdo intentionally broadcast his threats over publically available social media and within radical online communities. Colasurdo admitted during a forensic psychological interview that one of his goals was to bring media attention to both himself and the victims of his threats. *See* Oneal Report at 7 ("I was trying to get the media's attention on my subjects. . . . I [made] death threats and was trying to get media attention . . ."). Indeed, Colasurdo succeeded in getting the media's attention. PSR Sentencing Recommendation at 6 ("Mr. Colasurdo's arrest following the threats was also discussed on several local and national news outlets.").

As a result, the Probation Office correctly assesses: "[I]t is likely that his sentence will be [discussed in the national media] as well." PSR Sentencing Recommendation at

SENTENCING MEMORANDUM - 7
CR19-097, *United States v. Chase Bliss Colasurdo*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

6. Therefore, in large part due to Colasurdo's own efforts to publicize his offense conduct, the sentence in this case has the potential to send a powerful deterrent message.

> [A] significant sentence here has the potential to remind men and women who have found themselves wrapped up in radical online communities that threats made behind the comfort of computer screens are taken seriously. It may prompt such individuals to reconsider the misleading anonymity of a keyboard. And . . . may deter radicalized individuals from taking any steps – online or offline – toward violence.

PSR Sentencing Recommendation at 6.

The government joins the Probation Office in encouraging the Court to send an appropriate message of deterrence with the sentence in this case. A sentence of 60 months will achieve that important goal of sentencing.

### IV. Conclusion.

For all of the reasons set forth above, the government recommends that the Court sentence the defendant to a term of imprisonment of 60 months and a term of supervised release of three years, with all of the conditions of supervised release recommended by the Probation Office.

DATED this 11th day of October, 2019.

Respectfully submitted,

BRIAN T. MORAN
United States Attorney

_s/ Todd Greenberg_
TODD GREENBERG
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-3903
Facsimile: 206-553-4440
Phone: 206-553-2636
E-mail: Todd.Greenberg4@usdoj.gov

SENTENCING MEMORANDUM - 8
CR19-097, *United States v. Chase Bliss Colasurdo*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I hereby certify that on October 11, 2019 I electronically filed the foregoing with |
| 3 | the Clerk of the Court using the CM/ECF system which will send notification of such |
| 4 | filing to the attorney(s) of record for the defendant(s). |

*s/Jenny Fingles*
JENNY FINGLES
Legal Assistant
United States Attorney's Office
700 Stewart, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
E-mail: jenny.fingles@usdoj.gov

SENTENCING MEMORANDUM - 9
CR19-097, *United States v. Chase Bliss Colasurdo*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970